| **Pelaez v City of New York** |
|:---:|
| 2024 NY Slip Op 30826(U) |
| March 15, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 150563/2018 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    **HON. SHLOMO S. HAGLER** | **PART**           **17** |

*Justice*

-----------------------------------------------------------------------X

ROLANDO PELAEZ,

             Plaintiff,

      - v -

THE CITY OF NEW YORK, SKANSKA USA BUILDING INC.,42ND STREET DEVELOPMENT PROJECT INC.,

             Defendant.

-----------------------------------------------------------------------X

THE CITY OF NEW YORK, SKANSKA USA BUILDING INC.

             Plaintiff,

      -against-

TRI STATE DISMANTLING CORP.

             Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 150563/2018 |
| **MOTION DATE** | 02/06/2023 |
| **MOTION SEQ. NO.** | 004 |

## DECISION + ORDER ON MOTION

Third-Party
Index No. 595957/2018

The following e-filed documents, listed by NYSCEF document number (Motion 004) 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 144, 145, 146, 147, 149

were read on this motion to/for            JUDGMENT - SUMMARY            .

Plaintiff Rolando Pelaez moves for summary judgment on the issue of liability under

Labor Law § 240 (1). Defendants The City of New York, Skanska USA Building Inc.

("Skanska"), and 4TS II LLC (collectively "Defendants") cross-move for summary judgment

dismissing plaintiff's claims under Labor Law §§ 240 (1), 241 (6), 200, and common law

negligence. At oral argument held on August 9, 2023, the Court denied defendants' cross-motion

as to Labor Law §§ 241 (6) and 200 and common law negligence. As such, plaintiff's claim

under Labor Law § 240 (1) is the only issue still outstanding on this motion and cross-motion.

150563/2018 PELAEZ, ROLANDO vs. CITY OF NEW YORK
Motion No. 004

Page 1 of 11

[* 1]

## Facts

*Plaintiff's Deposition*

This action arises out of an accident that occurred on June 15, 2017 when plaintiff was employed with third-party defendant Tristate Dismantling Corp. ("Tristate") (Plaintiff's November 30, 2020 EBT, Plaintiff's Ex. 13 [NYSCEF Doc. No. 103] at 74). The accident took place on the 19th floor of a building located at 4 Times Square in Manhattan (*id.* at 77-78). At the time of the accident plaintiff and other employees of Tristate were performing demolition work on the entire floor (*id.* at 88). Plaintiff was wearing safety goggles and a hard hat (*id.* at 83-84). He and a coworker were instructed to "rip up the pipe, and be very careful, and that's it" (*id.* at 88). Plaintiff testified that his foreman, Gilberto, who also worked for Tristate, gave plaintiff those instructions (*id.* at 77, 90). The pipes were located on the ceiling (*id.* at 88). A Sawzall was used to cut the pipes down from the ceiling (*id.* at 92). Plaintiff further testified that the foreman "had two people to perform that job and do the work that day so it was the guy that cuts with the Sawzall, so that was the other guy. And myself, I would be there to help him" (*id.*).

The pipes that plaintiff and his coworker were instructed to cut down were approximately 4 to 6 inches in diameter and 15 to 16 feet in length (*id.* at 95-96). The pipes were hanging from the ceiling with "hooks" and "you have to cut that in order to bring the tube down" (*id.* at 96). They had already cut down approximately four to five pipes that day before the accident occurred (*id.* at 95). Plaintiff's partner used the Sawzall the entire time and was up on an A-frame ladder in order to cut the pipes (*id.* at 97). Plaintiff testified that he never went on the ladder and stayed on the floor while the pipe was being cut by his partner (*id.* at 97). His partner would make two cuts "at the beginning and at the end" of the pipe in order to bring the pipe down (*id.*). Specifically, when asked if his partner "would cut one end of the black pipe, then cut

150563/2018 PELAEZ, ROLANDO vs. CITY OF NEW YORK
Motion No. 004

Page 2 of 11

however many hooks were holding that section of the pipe up, and then make a cut to the other end of the black pipe," plaintiff answered "Yes" (*id.* at 104).[1] Plaintiff testified that his partner "would have to go up and cut it. I would be on the floor holding it so it wouldn't fall" (*id.* at 98). He would hold the pipe with both hands and would grab the pipe when his partner cut the hooks "[a]s the pipe was coming down" (*id.*). Plaintiff testified that this was the way he always did it and that it was the "logical way" (Plaintiff's June 10, 2021 EBT, Plaintiff's Ex. 14 [NYSCEF Doc. No. 104] at 22-23).

At the moment of the accident, plaintiff's partner had already made the first cut of the pipe and had cut down all the hooks, so the final cut of the black pipe was all that remained before the pipe would fall (Plaintiff's Ex. 13 at 106). Describing the accident, plaintiff testified as follows:

> I was on the left side of the guy when he was cutting the pipe. I was towards the end of it, and then there was a leak so I told the guy to wait to cut the pipe while I go get a [bucket], and then he completely ignored me and he continued cutting. So not even 20 seconds passed for me to get the [bucket], and he cuts and cuts, and then I don't know what else to tell you, because I pretty much fell asleep on the floor

*Id.* at 107.

Plaintiff was standing next to his partner who was on the ladder at the time of the accident (Plaintiff's Ex. 14 at 71). He testified that he had been holding the cut end of the pipe and noticed that it had begun to leak (*id.* at 71-72). He testified that he asked his partner "to wait for me to get a bucket to collect the water that was leaking. I asked him many times to stop cutting so that I could go and get the bucket, but he didn't listen to me" (*id.* at 73). He further testified that he made eye contact with his partner while he was using the Sawzall and asked him

---

[1] At plaintiff's second deposition on June 10, 2021, plaintiff stated differently that all hangers must be cut before any sections of the pipe could be cut (Plaintiff's Ex. 14 at 24).

150563/2018 PELAEZ, ROLANDO vs. CITY OF NEW YORK
Motion No. 004

Page 3 of 11

3 of 11

[* 3]

"many times and he did not pay any attention" (*id.* at 76-77). When the pipe made contact with the plaintiff, he was moving back to hold the end of the pipe after placing the bucket on the floor (*id.* at 74). Plaintiff believes the pipe hit him because his partner did not listen to him to stop cutting when plaintiff went to get the bucket (*id.* at 75).

*Skanska's Deposition*

Patrick Mawhinney testified on behalf of defendant Skanska. He began working for Skanska in April 2014 as a project engineer (Mawhinney's EBT, Plaintiff's Ex. 15 [NYSCEF Doc. No. 105] at 7). He began working on the project at 4 Times Square in March 2016 (*id.* at 10). Skanska was the general contractor on the project and was hired by the Durst Organization ("Durst") to serve in that role (*id.* at 11). The 19th floor of the building came under Skanska's scope of work "sometime between 2016 and 2017" (*id.* at 18). Skanska engaged Tristate as a demolition subcontractor for "full demolition of the offices on the [19th] floor" with approval from Durst (*id.* at 19). Even though Tristate performed the demolition, Mawhinney testified that Skanska had employees, including himself, monitoring the work done on the 19th floor (*id.*). With respect to the safety protocols initiated on the site by Skanska, Mawhinney testified that Skanska "give[s employees] orientation the first day on site. There's signage everywhere stating the safety policy, we have monthly safety meetings, we did toolbox talks weekly that go over policy and they review it themselves every day" (*id.* at 28-29).

Specifically with respect to cutting pipes, Mawhinney stated that "it's contractor means and methods, you can use a chainfall or roustabout, depending on what they're using Skanska can say this is how you need to use this equipment" (*id.* at 34). Skanska "approved Tristate's means and methods for pipe demolition" (*id.* at 60). Mawhinney testified that Skanska would not provide workers with any equipment or materials such as "hard hats or harnesses" or "anchors or

**150563/2018 PELAEZ, ROLANDO vs. CITY OF NEW YORK**
**Motion No. 004**

**Page 4 of 11**

[* 4]

netting" as that was the contractor's job (*id.* at 65). When asked to confirm that there "was no wires, no ropes, just the worker with the end of the pipe and that's it," Mawhinney responded "I don't see anything" (*id.* at 47).

## Summary Judgment Standard

"[T]he proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Ostrov v Rozbruch*, 91 AD3d 147, 152 [1st Dept 2012]). "Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). Once a movant has met this burden, "the burden shifts to the opposing party to submit proof in admissible form sufficient to create a question of fact requiring a trial" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). Finally, evidence must be "construed in the light most favorable to the one moved against" (*Kershaw*, 114 AD3d at 82). Therefore, if there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

## Discussion

Labor Law § 240 (1), also known as the Scaffold Law, provides, as relevant:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

**150563/2018  PELAEZ, ROLANDO vs. CITY OF NEW YORK**
Motion No. 004

Page 5 of 11

5 of 11

"'Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Importantly, Labor Law § 240 (1) "is designed to protect workers from gravity-related hazards . . . and must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC*, 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]). Section 240 (1) recognizes two different types of cases: those involving a "falling worker" and those involving a "falling object" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). With respect to "falling object" cases, Section 240 (1) applies "where the falling of an object is related to a significant risk inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured" (*id.* at 267-68 [internal citations and quotation marks omitted]). Liability in such cases will attach when the plaintiff demonstrates that the object was in the process of being "hoisted or secured" or where, at the time the object fell, it "required securing for the purposes of the undertaking" (*Fabrizi v 1095 Ave. of the Ams., LLC*, 22 NY3d 658, 662-63 [2014]).

"[W]hen a worker is performing one of the inherently dangerous activities" within the scope of Section 240 (1), injury from the contractor or owner's failure to provide adequate worker safety devices is foreseeable (*Ortega v City of New York*, 95 AD3d 125, 128 [1st Dept 2012]). "Thus, a plaintiff merely has to demonstrate that he or she was injured when an elevation-related safety device failed to perform its function to support and secure him from injury" (*id.* [internal citations omitted]; *see also Perez v NYC Partnership Hous. Dev. Fund Co., Inc.*, 55 AD3d 419, 420 [2008] ["it is sufficient for purposes of liability under section 240(1) that

**150563/2018 PELAEZ, ROLANDO vs. CITY OF NEW YORK**
Motion No. 004

**Page 6 of 11**

[* 6]

6 of 11

adequate safety devices to prevent the [structure] from slipping or protecting plaintiff from falling were absent"] [internal quotation marks omitted]). As such, to prevail on a Section 240 (1) claim, a plaintiff must show that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]).

In support of his motion for summary judgment, plaintiff argues that his injury stemmed "directly from the flow of gravity upon the pipe," which fell due to defendants' failure to provide plaintiff and his partner with adequate safety devices to "lower the pipe in a safe and controlled manner" (Plaintiff's Memo of Law [NYSCEF Doc. No. 108] at 6). Plaintiff argues that "despite chainfalls and roustabouts being methods by which pipes . . . could be lowered, no wires, ropes, or other devices were provided so as to control the descent of the pipe" (*id.*).

In opposition, and in support of their cross-motion, defendants argue that "it is not enough that a device 'should' have been provided for the undertaking; plaintiff must establish that the safety device was required for the specific work being performed" (Defendants' Aff. in Support [NYSCEF Doc. No. 113] at 7). Defendants argue that the only device enumerated in the statute that plaintiff alleged was not present were ropes, and it is neither customary nor required for such safety devices to be used when performing the kind of demolition work that plaintiff was performing at the time of his accident and had performed "hundreds of times" before (*id.* at 8-9).

Plaintiff has met his *prima facie* burden for summary judgment on liability. He offered uncontroverted evidence through his and Mawhinney's depositions that there were no safety devices to assist him and his partner in taking down the pipes, and he established that the lack of adequate safety devices provided by defendants was a proximate cause of his injury. Further,

**150563/2018  PELAEZ, ROLANDO vs. CITY OF NEW YORK**
Motion No.  004

Page 7 of 11

[* 7]

7 of 11

Mawhinney testified that there are safety devices that could have been used to help plaintiff as he was doing this demolition work, such as chainfalls or roustabouts (Plaintiff's Ex. 15 at 34). Contrary to defendants' arguments, plaintiff does not carry the burden of showing that the safety device "was *required* for the specific work being performed" (*id.* at 7 [emphasis added]). The purpose of Section 240 (1) "is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility," namely owners and contractors (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d at 500). As such, plaintiff need only show that the absence of adequate safety devices was a proximate cause of his injury at the worksite, which he has done (*see, e.g., Ortega*, 95 AD3d at 128; *Mercado v Caithness Long Island LLC*, 104 AD3d 576, 576-77 [1st Dept 2013] [granting summary judgment on liability because "[p]laintiff established that his injuries were caused, at least in part, by the absence of proper protection required by the statute"]; *Cardenas v One State St, LLC*, 68 AD3d 436, 438 [1st Dept 2009] [granting summary judgment to plaintiff on liability because "plaintiff offered uncontroverted evidence that he was not provided with any safety equipment to aid in accomplishing the task he was instructed to perform, and that the failure to provide any such device was the proximate cause of his injuries"]).

Defendants' argument that the use of such safety devices is not necessary under the Industrial Code or OSHA regulations is unavailing. Section 240 (1) is not concerned with provisions of the Industrial Code or any statute outside the Labor Law statute so an argument that safety devices are "not required" under any statute or code besides the Labor Law statute itself is irrelevant.

Defendants offer an expert affidavit of professional engineer Bernard P. Lorenz, P.E. (Lorenz Aff. [NYSCEF Doc. No. 130] ¶ 2). In his affidavit Mr. Lorenz opines that the use of a

150563/2018  PELAEZ, ROLANDO vs. CITY OF NEW YORK
Motion No. 004

Page 8 of 11

[* 8]

safety device enumerated in Section 240 "would have prevented the intended demolition work, the removal of the pipes from the ceiling level" and "would require mathematical calculations in order to determine the center of gravity of each individual pipe section to be removed" (*id.* ¶¶ 6-7). He opines that plaintiff and his coworker were demolishing the pipe "in a safe and proper manner in accordance with construction industry custom and practice" and safety devices like ropes, stays, and hangers were not required (*id.* ¶ 8).

Despite these contentions, it has been established in the First Department that "defendants' argument that failure to provide an appropriate safety device was either impracticable under the circumstances or would not have prevented the accident is unavailing" (*Pichardo v Urban Renaissance Collaboration Ltd. Partnership*, 51 AD3d 472, 472-73 [1st Dept 2008]). Similarly, "the testimony and expert opinion that a safety device was neither necessary nor customary is insufficient to establish the absence of a Labor Law § 240 (1) violation" (*Gonzalez v Paramount Group, Inc.*, 157 AD3d 427, 428 [1st Dept 2018] [internal quotation marks omitted]). Even plaintiff's own testimony that he has performed this demolition work "hundreds of times prior" in a similar manner without safety devices is unavailing to show that a safety device in this instance is not necessary under Section 240 (1) (Defendants' Aff. at 9).

Next, despite Mr. Lorenz's opinion that providing safety devices would prevent the intended demolition work, the First Department has held that using safety devices to prevent the uncontrolled descent of an object is not contrary to the purpose of demolition work (*Mayorga v 75 Plaza LLC*, 191 AD3d 606, 607 [1st Dept 2021] ["Further, regulating [the object's] descent to prevent it from falling would not have been contrary to the purpose of work"]). In light of the "uncontroverted fact" that there is no dispute that no safety devices were provided to plaintiff and his coworker, "it would be error to submit to the jury for their resolution" the dispute

**150563/2018  PELAEZ, ROLANDO vs. CITY OF NEW YORK**
**Motion No. 004**

Page 9 of 11

9 of 11

[* 9]

between plaintiff and defendants' expert "as to what safety devices, if any, should have been employed" (*Gonzalez*, 157 AD3d at 428).

In opposition to plaintiff's motion and in support of their own cross-motion, defendants also argue that plaintiff was the sole proximate cause of his accident (Defendants' Aff. at 9). Defendants argue that plaintiff was "fully aware that it was his responsibility to maintain his hold on the [pipe] while his partner cut the other end of the pipe" and because he "released a pipe that he, and he alone, was tasked with holding," he bears sole responsibility for the accident (*id.* at 9-10).

The defense of sole proximate cause "generally applies where the worker misused, removed, or failed to use an available safety device that would have prevented the accident, or knowingly chose to use an inadequate device despite the availability of an adequate device" (*Boyd v Schiavone Const. Co., Inc.*, 106 AD3d 546, 548 [1st Dept 2013]). Here, there is no dispute that there was no safety device provided to the plaintiff. By arguing that the plaintiff was the sole proximate cause of his own accident because he walked away from his job of holding the pipe, defendants essentially argue that plaintiff was meant to be his own safety device, which is completely contrary to the purpose of Section 240 (1) in the first place. Plaintiff cannot be the sole proximate cause of his accident when no safety devices were provided (*see DeRose v Bloomingdale's Inc.*, 120 AD3d 41, 45 [1st Dept. 2014]). In any event, the evidence is uncontroverted that plaintiff attempted to communicate with his partner to stop cutting before he walked away to get the bucket. By communicating with his partner, plaintiff fulfilled his obligation under the Labor Law and could not have been the sole proximate cause of the accident even when his coworker continued to cut the pipe after the plaintiff walked away.

**150563/2018  PELAEZ, ROLANDO vs. CITY OF NEW YORK**
Motion No.  004

Page 10 of 11

[* 10]

Plaintiff has met his burden for summary judgment on liability by showing that the lack of adequate safety devices was a proximate cause of his accident. Defendants conversely did not show their entitlement to dismissal of plaintiff's Section 240 (1) claims because there is no triable issue of fact that plaintiff's injury occurred "because of the absence or inadequacy of a safety device of the kind enumerated in the statute" (*Narducci*, 96 NY2d at 268). Defendants also failed to raise a triable issue of fact that plaintiff was the sole proximate cause of the accident.

### Conclusion

Accordingly, it is

ORDERED that plaintiff's motion for summary judgment on liability under Labor Law § 240 (1) is granted; and it is further

ORDERED that defendants' cross-motion to dismiss plaintiff's Labor Law § 240 (1) claim is denied.

March 15, 2024
DATE

SHLOMO S. HAGLER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

150563/2018   PELAEZ, ROLANDO vs. CITY OF NEW YORK
Motion No. 004

Page 11 of 11

11 of 11