[936 NYS2d 31]

DEBORAH OSTROV, Respondent, v JACOB ROZBRUCH, M.D., Appellant, et al., Defendant.

First Department, January 3, 2012

APPEARANCES OF COUNSEL

*Heidell, Pittoni, Murphy & Bach, LLP*, New York City (*Daniel S. Ratner* and *Daryl Paxson* of counsel), for appellant.

*Kramer, Dillof, Livingston & Moore*, New York City (*Matthew Gaier* of counsel), for respondent.

### OPINION OF THE COURT

SWEENY, J.

This medical malpractice action requires us to refine the scope of supplemental submissions on motions for summary judgment.

Plaintiff is an 80-year-old woman with a long history of orthopedic and vascular problems. She has been treated over the years by a number of physicians in various medical disciplines, including defendant, an orthopedic surgeon. Defendant Jacob Rozbruch, M.D. treated plaintiff for a variety of orthopedic conditions and performed a number of surgeries, including a 2001 elbow fracture repair, a 2001 total hip replacement, a 2003 total right knee replacement and a 2004 total left knee replacement, the latter being the subject of this litigation.

On November 14, 2001, at a follow-up visit concerning plaintiff's hip replacement surgery, defendant observed that plaintiff had limited range of motion in the lower extremities. X rays revealed end-stage osteoarthritis to the right knee, and

defendant recommended bilateral knee replacement surgery. Plaintiff did not have surgery at that time but returned to defendant's office in September 2003, complaining of severe pain in her right knee. Defendant again recommended bilateral knee replacement surgery, and, on October 13, 2003, a right knee replacement was performed at Beth Israel Medical Center.

During postsurgical rehabilitation for the right knee replacement, it was noted that plaintiff suffered numbness of the left lower extremity, which condition had apparently commenced prior to the right knee surgery. Defendant performed some tests and, on November 11, 2003, recommended that plaintiff also undergo left knee replacement surgery. On March 12, 2004, defendant noted a plan to schedule the left knee replacement surgery for May, following preoperative clearance by plaintiff's internist and a consult by a foot specialist.

On June 7, 2004, defendant performed a total left knee replacement on plaintiff at Beth Israel. On June 11, a Beth Israel physical therapist observed swelling on plaintiff's left leg, which was similar to that observed after the surgery on her right knee. This swelling continued to increase and in December 2004 plaintiff's vascular surgeon, Dr. Haveson, noted that he was "mystified" by the swelling. Plaintiff thereafter was treated by a number of different medical providers for this condition throughout 2005 and into 2006. The reports of at least two of these providers attributed her condition to the left knee surgery.

Plaintiff commenced this medical malpractice action on or about November 7, 2006. In her bill of particulars, plaintiff alleged, inter alia, that defendant doctor was "careless, unskillful and negligent in failing to pay sufficient heed to plaintiff's prior history . . . in failing to timely and properly assess the vascular status of the left lower extremity pre-operatively." Plaintiff also alleged that the surgery on her left knee was improperly performed.*

On August 17, 2009, defendant doctor timely moved for summary judgment, arguing that plaintiff was an appropriate candidate for surgery, that the surgery was properly performed, and that no interoperative vascular injury occurred. In support of his motion, defendant submitted the affidavits of six experts, four of whom were plaintiff's own treating physicians. In opposition, plaintiff argued that questions of fact existed concern-

---

* Plaintiff also alleged lack of informed consent but that cause of action was subsequently withdrawn.

ing, inter alia, whether defendant departed from good and accepted medical practice in recommending and performing the left knee replacement, given the totality of plaintiff's prior medical history. In support, plaintiff submitted the affidavit of her expert orthopedic surgeon, name redacted, who opined that given plaintiff's longstanding diagnosis of chronic venous insufficiency, as well as specific problems concerning her left foot, toes and leg, the surgery was contraindicated.

In reply, defendant argued that plaintiff had not specifically pointed out how the surgery at issue was negligently performed. As to whether the surgery was contraindicated, defendant argued that plaintiff never properly pleaded such an allegation in either her complaint or bill of particulars and that plaintiff's orthopedic expert's opinions on this issue were unsupported and conclusory.

On July 7, 2010, the motion court heard oral argument on defendant's motion and on the hospital's motion for summary judgment. In an order dated July 12, 2010, the court granted summary judgment to defendant hospital, but held defendant doctor's motion in abeyance (2010 NY Slip Op 33754[U]). The court concluded that defendant doctor made a prima facie showing that he had not departed from accepted medical/surgical care in his treatment of plaintiff, thus shifting the burden to plaintiff to demonstrate the existence of material issues of fact. The court went on to state that while plaintiff's expert had not taken issue with the manner in which the surgery was performed, he opined that defendant doctor had deviated from accepted medical care by performing the surgery in the first place, stating it was contraindicated by plaintiff's past history of vascular issues. Noting that defendant's position that he was "never explicitly on notice" of this new claim (i.e., that the surgery was contraindicated) had "some merit," the court nevertheless was troubled by the "limited discussion by the plaintiff's expert as to why this precise surgical procedure, the total left knee replacement, was contraindicated in light of the plaintiff's history and clinical picture and also as to the mechanism of the injury" (2010 NY Slip Op 33754[U], at *4). The court found plaintiff's expert's affirmation did not provide specifics as to why the surgery was contraindicated or how the surgery caused the specific postsurgical deterioration. Observing that it "could be argued" that this lack of evidence warranted granting of defendant's motion, the court nevertheless decided that the "better practice" would be to direct both sides to submit additional evidence.

Pursuant to the court's direction, plaintiff submitted an expert affirmation from a vascular surgeon, who opined in essence that, due to plaintiff's chronic venous disorders, knee replacement surgery would exacerbate her condition and thus the surgery was contraindicated. Defendant submitted three additional expert affirmations from three additional expert physicians, as well as supplemental affirmations from three previously named experts, which in essence contradicted plaintiff's new expert and clarified previously submitted affirmations. Of note is the fact that plaintiff's additional expert was from a different medical discipline (vascular surgery) and did not submit an affirmation in the original opposition papers. Similarly, although defendant did submit supplemental affirmations from three of his experts who had provided affirmations on the original motion, he too submitted affirmations from three experts who had not previously provided affirmations.

The motion court again heard oral argument, at which time plaintiff's counsel, by way of rebuttal, handed up to the court a medical article authored by three of defendant's additional experts in an attempt to impeach their opinions. Significantly, defendant's counsel was not provided with this article before oral argument and it was not cited by any expert for either party. Plaintiff's counsel also advised the court that plaintiff's right leg had been amputated.

In a decision dated January 14, 2011, the court noted that plaintiff's three right knee "subsequent surgeries appeared to be a powerful argument in favor of the disputed June 2004 left knee surgery despite the plaintiff's circulatory problems," especially since they were performed by doctors other than defendant (2011 NY Slip Op 30120[U], at *9). However, the court stated that this argument "loses its appeal" because, as counsel noted at oral argument, plaintiff's right leg was subsequently amputated. Significantly, the record before us is devoid of any evidence concerning plaintiff's right leg amputation. There is also no indication regarding the reason for such amputation. Most importantly, the relevance of the alleged right leg amputation to the claims of malpractice regarding plaintiff's left knee surgery were not discussed in the decision and are not part of the record before us. The court ultimately granted defendant's motion for summary judgment dismissing all causes of action except for the claim that the June 2004 "total left knee replacement was contraindicated in light of what was known and could have been reasonably anticipated regarding plaintiff's venous

disorder" (2011 NY Slip Op 30120[U], at *11). Defendant appeals.

We start with an examination of the basic purpose of summary judgment.

Calling summary judgment "a valuable, practical tool for resolving cases that involve only questions of law," the Court of Appeals stated it was "a great benefit both to the parties and to the overburdened New York State trial courts" by allowing a party to show that there is no material issue of fact to be tried, "thereby avoiding needless litigation cost and delay" (*Brill v City of New York*, 2 NY3d 648, 651 [2004]). As the Court recognized in *Brill*, these benefits can only be realized when motions for summary judgment are timely brought. The Legislature agreed, and in a 1996 amendment to CPLR 3212 (a), provided that such motions be brought within 120 days after the filing of the note of issue, except for good cause shown. The goal, of course, is to provide a thorough presentation of the evidence on both sides and an expeditious determination by the court as to whether there are any material issues of fact to be tried.

Since summary judgment is the equivalent of a trial, it has been a cornerstone of New York jurisprudence that the proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once this requirement is met, the burden then shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

Here, the motion court specifically found that defendant met his burden of establishing that he was entitled to judgment as a matter of law, thus shifting the burden to plaintiff to properly establish the existence of a material issue of fact. The court recognized that plaintiff's initial opposition papers did not meet that burden because of the "limited" discussion regarding whether the surgery on plaintiff's left knee was contraindicated. Although recognizing that this claim was possibly being raised for the first time in opposition to defendant's motion, the court, apparently relying on some of our prior decisions permitting additional submissions under limited circumstances, opted to permit the parties to submit additional evidence on this issue.

The resulting submissions went well beyond the limitations our prior decisions envisioned.

It appears that our holdings in *Orsini v Postel* (267 AD2d 18 [1999]), *Ashton v D.O.C.S. Continuum Med. Group* (68 AD3d 613 [2009]), and *Tierney v Girardi* (86 AD3d 447 [2011]) may have created the erroneous impression that supplemental submissions could be routinely utilized in summary judgment motions without regard to the scope of such submissions or the time limitations imposed by the CPLR. While such supplemental submissions may be appropriate in particular cases, they should be sparingly used and then only for a limited purpose. A careful reading of these cases warrants this conclusion.

In *Orsini*, which was decided before *Brill*, we found that the court properly exercised its discretion in accepting a supplemental physician's affirmation submitted by the plaintiff without leave of court in response to the defendant's reply papers. There, the affirmation "was submitted well in advance of argument, the IAS Court expressly offered defendant an opportunity to respond, and it does not otherwise appear that defendant was prejudiced by the IAS Court's preference to decide this eve-of-trial motion on as full a record as plaintiff wished to make" (267 AD2d at 18). Significantly, *Orsini* presented the type of "eve-of-trial" motion that *Brill* expressly condemned.

In *Ashton*, the court directed the plaintiff's expert to submit a supplemental affirmation elaborating solely on his initial conclusions. The defendants were also given a final opportunity to respond. We held that "[t]he court properly exercised its discretion in directing plaintiff to submit a supplemental expert affirmation stating the basis for the expert's opinion, where defendants were permitted to respond and were not otherwise prejudiced" (68 AD3d at 614). Of note is the fact that, unlike here, the supplemental affirmation in *Ashton* was from the *same* expert, not a different expert in a different medical discipline, and was limited to a discrete issue, i.e., clarification of the grounds for the plaintiff's expert's initial conclusion.

*Tierney* presented a different situation. There, the defendants demonstrated their entitlement to judgment dismissing the complaint as a matter of law, shifting the burden to the plaintiff. The court properly exercised its discretion in excusing plaintiff's procedural oversights, "including the untimely filing of her expert's affirmation, where there was no showing that plaintiff acted in bad faith or that the late filing prejudiced defendants, and where the court permitted defendants to respond to the

supplementary affidavit" (86 AD3d at 448). Once again, *Tierney* was not a situation where the plaintiff's opposition papers were insufficient and the parties were permitted to submit additional papers.

The supplemental submissions in all three cases were limited in scope and temporal duration. Indeed, there is no indication that the supplemental submissions included material from additional experts in other medical disciplines or information not originally referenced in plaintiff's initial opposition papers.

The situation before us in this case is very different. As noted, both parties submitted supplemental expert affirmations from experts in different medical disciplines. Moreover, these affirmations expanded the scope of plaintiff's theory of medical malpractice beyond what was encompassed in the complaint and bill of particulars. Indeed, plaintiff's theory, as originally set forth in the complaint, alleged, inter alia, that the surgery was improperly performed. Her bill of particulars and supplementary bill of particulars only made oblique references to the failure to discuss alternatives to surgery and then only in the bill of particulars in response to defendant hospital's demands, not those of defendant doctor. "A court should not consider the merits of a new theory of recovery, raised for the first time in opposition to a motion for summary judgment, that was not pleaded in the complaint" (*Mezger v Wyndham Homes, Inc.*, 81 AD3d 795, 796 [2011]; *see also Abalola v Flower Hosp.*, 44 AD3d 522 [2007]). Since the court found plaintiff's opposition papers insufficient save for this new theory of recovery, defendant's motion should have been granted.

The problems created by open-ended supplemental submissions are manifest. A procedure designed to expeditiously determine a case took over 17 months from the time of the original filing of defendant's motion for summary judgment to the final order of the court. What started out as a limited inquiry into the basis of plaintiff's expert's conclusion that the surgery in question was contraindicated took on a life of its own, with the parties submitting affirmations from additional experts in a variety of medical disciplines. The improper submission of the medical article during the second oral argument caught defendant unawares. Importantly, none of the experts referenced this article in arriving at their opinions. Nevertheless, the court, over defendant's objections, received this article and utilized it as part of the basis for finding that plaintiff had raised a material issue of fact warranting a trial.

As the Court of Appeals stated in a different context, "[O]ur court system is dependent on all parties engaged in litigation abiding by the rules of proper practice" (*Gibbs v St. Barnabas Hosp.*, 16 NY3d 74, 81 [2010], citing *Brill v City of New York*, 2 NY3d 648 [2004], *supra*). We have held that "motion practice in connection with summary judgment should be confined to the limits imposed by CPLR 2214 (b)" (*Henry v Peguero*, 72 AD3d 600, 602 [2010], *appeal dismissed* 15 NY3d 820 [2010]). We do not mean to limit the necessary discretion inherent in a court's authority to direct supplemental affirmations, in appropriate circumstances, such as those presented in *Ashton* or *Tierney*. Supplemental affirmations however, should be sparingly used to clarify limited issues, and should not be utilized as a matter of course to correct deficiencies in a party's moving or answering papers.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered July 21, 2010, which, to the extent appealed from as limited by the briefs, held defendant doctor's motion for summary judgment in abeyance pending the submission of further specified papers, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint. The appeal from the order, same court and Justice, entered on or about January 20, 2011, which, to the extent appealed from, denied so much of defendant's motion for summary judgment as sought dismissal of plaintiff's claim that the left knee replacement surgery was contraindicated, should be dismissed, without costs, as academic.

ANDRIAS, J.P., MOSKOWITZ, RICHTER and ROMÁN, JJ., concur with SWEENY, J.

Order, Supreme Court, New York County, entered July 21, 2010, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint. Appeal from order, same court and Justice, entered on or about January 20, 2011, dismissed, without costs, as academic.