| |
|---|
| **De Clef Pineiro v American Museum of Natural History** |
| 2024 NY Slip Op 31565(U) |
| May 3, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 157391/2021 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. SHLOMO S. HAGLER**                    PART                17
                                        *Justice*

------------------------------------------------------------------X

JOHN DE CLEF PINEIRO

                    Plaintiff,

            - v -

THE AMERICAN MUSEUM OF NATURAL HISTORY,

                    Defendant.

------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157391/2021 |
| MOTION DATE | 05/30/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 61, 62, 63, 64, 66

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

In this motion sequence, defendant American Museum of Natural History ("AMNH")

moves for summary judgment dismissing plaintiff John De Clef Pineiro's complaint. Plaintiff

opposes and cross-moves to amend the bill of particulars.

## I.      Facts

### *Plaintiff's Deposition*

This action arises out of an incident that occurred on April 23, 2021 at the American

Museum of Natural History in Manhattan (Plaintiff's EBT [NYSCEF Doc. No. 30] at 17).

Specifically, the accident occurred on a "subterranean staircase leading into the ground floor of

the museum" (*id.*). The staircase leads downward into the museum from the 81st Street subway

station (*id.* at 36). On the day of the subject accident, plaintiff John De Clef Pineiro was entering

the museum because he had an appointment for his COVID-19 vaccine (*id.* at 21). At that time,

the museum was serving as a vaccination site and the day of the subject accident was the first

day it was open for that purpose (*id.* at 21-22). Plaintiff walked from his apartment to get to the

**157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
**Motion No. 001**

**Page 1 of 12**

1 of 12

[* 1]

museum, and he noticed signs when he approached the museum (*id.* at 33). There were several signs affixed to the fencing around the museum property pointing towards the subject vaccination site (*id.* at 34-35). Plaintiff followed the signs which directed him past the main museum entrance and towards the entrance through the 81st Street subway station (*id.* at 35-36). Plaintiff had been in this station at least once before that he could remember, in approximately 2010 (*id.* at 37). However, plaintiff testified that the first time he had used the subject staircase was the day of the accident (*id.* at 38). Plaintiff was wearing a mask and a face shield and was also wearing his glasses (*id.*).

Plaintiff testified that there was a sign indicating the entrance to the vaccination site "[r]ight at the top of the stairs of the subway entrance leading downstairs to a long corridor" (*id.* at 41). Plaintiff descended the subway entrance stairs from the street level (*id.* at 42). To enter the museum from the subway station, there is a row of brass doors (*id.* at 43). There was a guard standing by the doors, to whom plaintiff showed his paperwork and the guard directed him through the middle brass door and down the stairs (*id.* at 44, 46). Plaintiff testified that when he first walked through the center set of brass doors, there was a wide and long flight of stairs leading downward (*id.* at 49). He described the lighting as "bright" (*id.*). Plaintiff began to descend the staircase (*id.* at 50). Plaintiff testified that the wide staircase is broken up into sections by handrails (*id.* at 54). Plaintiff testified that he remembered at least two handrails demarcating the middle section of the staircase which he was descending, but soon after, he said that he remembered a handrail on his right side only (*id.* at 54, 56). Plaintiff testified that he at first did not notice the handrails on either side of the section of staircase because the doors led him right down the center of the section (*id.* at 54). The doors did not immediately lead into the

157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY
Motion No. 001

Page 2 of 12

2 of 12

[* 2]

staircase; there was a platform before the stairs began (*id.* at 55). The stairs were made of "light-colored stone" and there were 14 steps (*id.* at 56).

Plaintiff was asked why he didn't proceed to either of the handrails before descending the staircase. He responded, "It was just a matter of trajectory, going through the doors, and then they opened up to the center portion of the staircase, so that [was] how I was proceeding directly" (*id.*). Plaintiff testified that he believed he was proceeding down the stairs "careful[ly], not fast" (*id.* at 58). He was not rushing because he was early to his appointment (*id.*). He also testified that he was looking down as he began to descend the steps (*id.* at 58-59).

The accident occurred when plaintiff was near the bottom of the steps (*id.* at 61). Plaintiff testified that he noticed a guard waving to him (*id.*). After seeing the guard wave in his direction, plaintiff testified that he looked up and "was no longer looking down" but remained going down the stairs at the same pace (*id.*). Describing the accident, plaintiff testified as follows:

> I proceeded down the steps. As I thought, I was proceeding all the way from the top, and my foot, left foot, slipped out from under me. I was still looking at the guard when this was happening. My foot slipped out from under me, which was a bit startling to me. I didn't know where it was going. It did land on another level below. I did not know what level that was. Whether it was yet another step or the ground floor, but by then, I had lost my balance. I was—my body was being propelled forward and all this took place within two seconds or so.

*Id.* at 65.

He testified that he fell on his shoulder on the floor (*id.* at 70). He testified that within a few seconds, people were crowding around him and he was helped into a chair (*id.* at 74-75). While he was sitting in the chair he spoke to Mr. Raphael Payne who created an incident report (*id.* at 75, 77). Plaintiff did not notice any water or debris on the steps (*id.* at 66). He also testified that in hindsight, he knew that there was a colored strip at the very last step that was a

157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY
Motion No. 001

Page 3 of 12

[* 3]

3 of 12

different color than the stairs and the rest of the floor, but he did not realize that at the time of the fall (*id.* at 81).

### AMNH Deposition

On behalf of the museum, Raphael Payne ("Payne") appeared for a deposition. Payne was employed by the museum as the Senior Manager of Fire and Life Safety at the time of the deposition (Payne EBT [NYSCEF Doc. No. 32] at 8). He testified that when plaintiff fell, Payne was at the lower level "over by where the security personnel who mans the subway station" stood (*id.* at 22). He continued that "all the time I was in that vicinity" (*id.*). He testified "My job in particular was to watch everybody who came into the building, because I could be called at any given time, and I was in a position where I was just standing there" (*id.* at 29). There was a station at the bottom of the subject staircase where security guards would check people's bags (*id.* at 30). Payne testified that once an individual reached the bottom of the staircase, if they had a bag, they would "be alerted to stop at the desk where security personnel would check their bag" (*id.*). Payne testified that he oversaw the security personnel who were with him at the vaccination site. In particular, he directed them to "fact check and provide the guidance of people where they should go" (*id.* at 27).

When asked if he saw what caused the plaintiff to fall, Payne testified that it appeared to him that plaintiff "misstepped" (*id.* at 36). Specifically, Payne testified that "his footing caused him to miss the bottom of the stair. He just missed the stair completely, that is how it looked to me" (*id.*) Payne testified that he made the incident report for the subject accident (*id.* at 40). On the incident report, he wrote that the plaintiff "misstepped at the bottom stair at the subway entrance" and testified that he based this off his perception of plaintiff's fall (*id.* at 42). Payne did

157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL                    Page 4 of 12
HISTORY
Motion No. 001

[* 4]                                                        4 of 12

not know of any other falling incident that occurred on the subject set of stairs besides the subject accident and two other incidents, but said it was possible (*id.* at 58).

## II.    Procedural History

Defendant filed this motion for summary judgment on May 30, 2023 (NYSCEF Doc. No. 23). On August 3, 2023, plaintiff filed a cross-motion to amend the bill of particulars to add a violation of the 1922 NYC Building Code (NYSCEF Doc. No. 49). Oral argument on this motion and cross-motion was held on November 27, 2023, whereby the Court denied the cross-motion to amend the bill of particulars as the staircase was not a type of staircase defined in the 1922 Building Code (*see* NYSCEF Doc. Nos. 64, 66).

## III.    Summary Judgment Standard

"[T]he proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Ostrov v Rozbruch*, 91 AD3d 147, 152 [1st Dept 2012]). "Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). Once a movant has met this burden, "the burden shifts to the opposing party to submit proof in admissible form sufficient to create a question of fact requiring a trial" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). Finally, evidence must be "construed in the light most favorable to the one moved against" (*Kershaw*, 114 AD3d at 82). Therefore, if there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

**157391/2021 · DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
**Motion No. 001**

**Page 5 of 12**

5 of 12

## IV. Discussion

A substantial section of the parties' papers is used to argue about the staircase's compliance with the New York City Building Code. This issue was previously decided at oral argument on November 27, 2023 when the Court determined the inapplicability of the 1922 Code to these stairs because they do not fit within that code's definition of "interior stairs" (*see* NYSCEF Doc. No. 66 at 13). Although it has been determined that AMNH cannot be liable under a violation of the Building Code, AMNH can still be liable under common law theories of negligence as the owner of the subject staircase (*see Branch v SDC Discount Store, Inc.*, 127 AD3d 547, 547 [1st Dept 2015]).

"In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom (*Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 825 [2016] [internal quotation marks and citation omitted]). It is a building owner's "normal duty to maintain the premises in a safe manner" (*Marcinak v Technical Mech. Servs., Inc.*, 17 AD3d 140, 140 [1st Dept 2005]). AMNH "had a common-law duty, as occupier of the premises, to maintain the staircase in a reasonably safe condition, in view of all the circumstances" (*Branch*, 127 AD3d at 547). Plaintiff advances three theories of common-law negligence, one of which was rejected at oral argument (*see* NYSCEF Doc. No. 66 at 29-30 [rejecting the argument that defendants were negligent when the AMNH security guard "distracted" plaintiff because "that would open up a Pandora's box for liability"]).

The first remaining argument is that the stairs were slippery which caused the plaintiff to fall. Defendant argues that there was no hazardous condition on the steps alleged by plaintiff, as there was no debris or physical defect on the step (*see* Memo of Law [NYSCEF Doc. No. 25] at

**157391/2021 DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
Motion No. 001

Page 6 of 12

6 of 12

10). Defendant further argues that the stairs are made of travertine, a type of stone which is inherently a non-slip material (*see id.*).

It must first be noted that the First Department has held that the mere "inherently slippery" condition of a floor surface is not an actionable defect to maintain a cause of action for negligence (*Waiters v Northern Trust Co. of New York*, 29 AD3d 325, 326-27 [1st Dept 2006]; *see also Sims v 3349 Hull Ave. Realty Co., LLC*, 106 AD3d 466, 467 [1st Dept 2013] [finding worn marble tread that caused plaintiff to slip on staircase was not an actionable defect]). Even if an inherently slippery staircase *could* support a cause of action for negligence, AMNH has met its prima facie burden by providing an expert affidavit from a professional engineer, David Behnken, P.E. who went to the accident site and inspected the subject staircase and stair treads (*see* Behnken Report [NYSCEF Doc. No. 34] at 1-2). Behnken reiterated that the stone treads are "slip-resistant in accordance with standard custom and practice" (*id.* at 4). Behnken conducted "wet dynamic slip resistance testing along the stairway's lower treads in the area of Mr. De Clef Pineiro's fall" and said this test was done in accordance with an approved standard for field slip resistance testing set forth by the American National Standards Institute (*id.* at 2-3). Behnken affirmed that this test determined the wet coefficient of friction on the stairs measured at 0.58, which is well above the minimum standard of 0.42 and as such, the stair material "provides a high slip resistance that meets the standard of care for walking surfaces" (*id.* at 4). This evidence submitted by the defendant's expert along with plaintiff's testimony that there was no visible debris or defect on the steps shows *prima facie* that there was no defective or slippery condition in existence when plaintiff fell (*see Silber v Sullivan Props., L.P.*, 182 AD3d 512, 512-13 [1st Dept 2020]).

157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY
Motion No. 001

Page 7 of 12

In opposition, plaintiff fails to raise a triable issue of fact regarding a defect on the staircase. Plaintiff's expert, David Jimenez, R.A., contends that the wet coefficient of friction test used by Behnken was not an accepted test to determine whether a staircase conforms with the Building Code (*see* Jimenez Report [NYSCEF Doc. No. 41] ¶¶ 8-9). It has been determined that conformity with a Building Code is no longer an issue in this motion and the remaining question is whether AMNH is liable under a common-law negligence standard. Even so, the First Department has recognized coefficient of friction tests to be acceptable standards to measure the slipperiness of a staircase when the expert references a "specific standard in asserting that a [minimum coefficient of friction value] is the commonly accepted value for a non-slip surface" (*Sarmiento v C&E Assocs.*, 40 AD3d 524, 526 [1st Dept 2007] [internal quotation marks omitted]; *see also Ridolfi v Williams*, 49 AD3d 295, 295 [1st Dept 2008]). Here, Behnken references the ANSI A326.3-2017 standard that determined that a coefficient of friction value of 0.42 or above provides high slip resistance (Behnken Report at 4).

Furthermore, Jimenez does not provide a competing test to show that the staircase was too slippery under accepted standards. Jimenez simply says he "felt the tread upon which Mr. De Clef Pineiro slipped with [his] hand" (Jiminez Report at ¶ 6). Jimenez says this is standard practice to determine whether stairs comply with Building Code requirements, but as previously mentioned, compliance with the Building Code is no longer a relevant standard for the purposes of this motion. The fact that Jimenez felt the stairs with his hand and it felt slippery does not create an issue of fact competing with the results of Behnken's coefficient of friction test (*see Silber,* 182 AD3d at 513 ["[P]laintiff's expert opinion was conclusory and speculative, since he did not take measurements of the coefficient of friction of the stairwell or conduct any other tests" to show the existence of "a hazardous condition"]). As such, plaintiff failed to raise a

**157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
Motion No.  001

**Page 8 of 12**

8 of 12

triable issue of fact that the stairs were slippery or contained some other actionable defect to support a denial of AMNH's motion for summary judgment.

The next theory of negligence proffered by the plaintiff is that the staircase created an "optical confusion." Plaintiff asserts that the staircase created an optical confusion because the layout and coloring of the stairs made it difficult to discern where the staircase began and ended (*see* Aff. in Opposition [NYSCEF Doc. No. 40] at ¶ 41). In support of its motion, defendant argues that there was no optical confusion as plaintiff himself testified the lighting was good, and photographs show a clear demarcation of where the stairs end in the form of a thick brown line at the foot of the stairs (*see* Memo of Law at 13; Behnken Photos [NYSCEF Doc. No. 34]). Furthermore, Behnken affirmed in his report that

> The presence, location, and color of the handrails, as well as the contrast in colors and textures between the stone treads and the terrazzo lower landing/lower level of the museum, provided numerous sharp visual cues of the stairway configuration. As such, the presence and location of the lower treads and lower landing are open and obvious, readily apparent to persons attentive to their surroundings, and safe.

Behnken Report at 5.

Indeed, the photographs taken by Behnken during his inspection show that there are many visual cues that would prevent optical confusion and assist a user in traversing the staircase. First, the wide staircase is sectioned off by brass handrails that start at the top step and end at the bottom step. Further, the photos show a thick brown line immediately before and after the beginning and end of the staircase to provide a color contrast visual cue as to where the steps begin and end. Finally, the more porous-looking travertine stair treads are a visibly different material than the smooth and shiny tiled floor. Defendant thus established its entitlement to summary judgment by submitting evidence that the stairs "were not dangerous conditions as a matter of law through photographic evidence" showing that the stairs were demarcated with

**157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
**Motion No.  001**

**Page 9 of 12**

9 of 12

[* 9]

thick brown lines contrasting with the color of the stairs and the floor (*Pinkham v West Elm*, 142 AD3d 477, 477 [1st Dept 2016]; *see also Kamps v New York City Transit Auth.*, 89 AD3d 421, 422 [1st Dept 2011]; *Hall v New Way Remodeling, Inc.*, 168 AD3d 620, 620 [1st Dept 2019] ["Defendant also showed that the alleged defect was open and obvious, and not inherently dangerous, by submitting photographs showing that the door saddle was readily observable"]).

In opposition, plaintiff failed to raise a triable issue of fact. Plaintiff testified that he had difficulty discerning where the stairs ended, and his expert Jiminez testified that the configuration of the stairs created a risk of optical confusion (*see* Ex. F to Plaintiff's Opp.; Jiminez Report at ¶ 14). However, this theory of optical confusion "was contradicted by the expert's own photographs" showing that the stairs had clearly demarcated thick brown lines at the beginning and end of the steps and the presence of the handrails to serve as visual cues for where the stairs began and ended (*Hall*, 168 AD3d at 620; Ex. A to Jiminez Report [NYSCEF Doc. No. 41]; *see also Martin v City of N.Y.*, 82 AD3d 653, 654 [1st Dept 2011] ["Although plaintiff alleged that a curb on the property caused her fall and that the curb posed an optical confusion, the photographic evidence is not sufficient to defeat the motions"]). Similarly, plaintiff testified that he went back to the subject staircase after the accident and took photos (*see* Plaintiff's EBT at 158). He testified that the photos taken of the staircase that day look "very similar . . . if not identical" to how the stairs looked on the date of the accident (*id.*). These photos also show the brass handrails and the thick brown line that is visible from the viewpoint of someone traversing down the stairs, thereby contradicting his argument that the stairs create a risk of optical confusion (*see* Ex. J to Memo of Law [NYSCEF Doc. No. 35])

Therefore, defendant met its burden on summary judgment by providing sufficient evidence to demonstrate that there was no actionable defect on the stairs. In opposition,

157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY
Motion No. 001

Page 10 of 12

plaintiff's testimony and his expert's report failed to raise a triable issue of fact precluding summary judgment in view of the photographs they submitted.

"Because the alleged defects are not actionable, the issue of whether defendant had notice is irrelevant" (*Rubin v Trustees of Columbia Univ. in the City of New York*, 212 AD3d 544, 545 [1st Dept 2023]). However, even if the issue of notice remained relevant, plaintiff failed to raise a triable issue of fact to preclude a granting of summary judgment to AMNH. The parties provided evidence in the form of two incident reports and videos of previous falls on the subject staircase occurring in the five years prior to plaintiff's accident (*see* Ex. B to Plaintiff's Opp. [NYSCEF Doc. No. 42]). However, plaintiff did not submit affidavits of the man or woman who were the subjects of the prior falls, and Payne testified that he did not recall seeing or writing the incident report for either prior fall (*see* Payne EBT at 51-53). Without any testimony from someone with knowledge, the statements contained in these incident reports constitute inadmissible hearsay (*see Vaughn v Westfield, LLC*, 216 AD3d 849, 851 [2d Dept 2023]).

Even if the court were to consider the statements contained within the incident reports, it would show that the incidents were not substantially similar to plaintiff's accident to constitute sufficient constructive notice and create a triable issue of fact (*see Mallen v Farmingdale Lanes, LLC*, 89 AD3d 996, 997 [2d Dept 2011] ["[T]he plaintiff's contention that incident reports regarding prior accidents raised a triable issue of fact . . . is speculative, as there was no evidence that those accidents were similar in nature to plaintiff's accident"]). The videos of both prior accidents show the subjects of the prior accidents falling on the left side of the staircase rather than the center section where plaintiff fell. Furthermore, both incident reports state that the patrons said they tripped and misstepped on the stairs, not that they slipped or were confused about where the stairs ended as the plaintiff here claims (*see* Ex. B to Plaintiff's Opp).

**157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
**Motion No. 001**

**Page 11 of 12**

11 of 12

Accordingly, even if the court *could* consider the contents of the incident reports, those contents do not describe similar enough accidents to plaintiff's as to raise a triable issue of fact regarding the defendant's constructive notice of an allegedly dangerous condition on the stairs. Defendant is therefore entitled to summary judgment dismissing plaintiff's complaint against it.

## V.  Conclusion

Accordingly, it is

ORDERED that defendant's motion for summary judgment is granted.

The clerk shall enter judgment accordingly.

May 3, 2024
DATE

SHLOMO S. HAGLER, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**157391/2021   DE CLEF PINEIRO, JOHN ET AL vs. THE AMERICAN MUSEUM OF NATURAL HISTORY**
**Motion No. 001**

**Page 12 of 12**

12 of 12