| **Mueller v 2001 Marcus Ave. LLC** |
|:---:|
| 2025 NY Slip Op 30181(U) |
| January 16, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 153625/2021 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. SHLOMO S. HAGLER** | PART 17 |
| | *Justice* | |

---------------------------------------------------------------------X

NORINE MUELLER, THOMAS MUELLER,

                Plaintiff,

          - v -

2001 MARCUS AVENUE LLC,2001 MARCUS AVENUE
SPECIAL MANAGER LLC,JEFFREY MANAGEMENT
CORP., THE FEIL ORGANIZATION, INC.,BROADWALL
MANAGEMENT CORP., BLDG 1031 LLC

                Defendant.

---------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 153625/2021 |
| MOTION DATE | 12/07/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63

were read on this motion to/for           SUMMARY JUDGMENT(AFTER JOINDER   .

Under motion sequence 001, defendants 2001 Marcus Avenue LLC, 2001 Marcus Avenue Special Manager LLC, Jeffrey Management Corp., The Feil Organization, Inc., Broadwall Management Corp., and BLDG 1031 LLC (collectively, "defendants") move pursuant to CPLR 3212 for summary judgment dismissing plaintiff Norine Mueller's ("plaintiff") complaint as against them in its entirety. Plaintiff opposes this motion.

## FACTS

*Deposition of Norine Mueller*

This action arises out of an accident in a medical facility parking lot located at 2001 Marcus Avenue in New Hyde Park (the "subject parking lot") on May 24, 2018 (Plaintiff's Dep. [NYSCEF Doc. No. 30] at 21-22). Plaintiff testified that the day of the accident was "a beautiful spring day" and the accident occurred "around 12, 12:30 in the afternoon" (*id.*). Plaintiff and her husband were at the subject parking lot after an appointment for plaintiff's husband (*id.* at 22).

Plaintiff testified that she had never been to the building before that day (*id.* at 23). Plaintiff testified that her accident occurred at the valet stand in the parking lot. She testified:

> When leaving the doctor's office, and my husband was walking with a cane, he was very slow, so he said, "Why don't you go ahead." Because it was very crowded there. . . . [S]o I went ahead, left him behind. And I walked straight to the valet booth, I stepped up on the curb, not realizing it wasn't level and I went down

*Id.* at 23-24. Plaintiff explained that she "stepped up and thought it was level, so I took a normal step and it wasn't level, so my foot, I guess, bent" and she fell down (*id.* at 28). Plaintiff testified that she couldn't remember where she was looking at the time of the accident because "it was five years ago. I'm sure I was looking straight ahead where I was walking" (*id.* at 26). Plaintiff testified that the curb that she stepped over was painted yellow (*id.* at 29). She testified that she did not observe any broken or cracked areas in the section of the island she fell on (*id.*). Using a photograph of the area of the accident in the deposition plaintiff explained that she was walking "kind of" in the path with yellow diagonal stripes towards the valet stand (*id.* at 35). She testified that she walked up towards the curb near the ramp of the valet stand (*id.* at 36).

Plaintiff had testified that the area was crowded at the time of her accident and "maybe two" people came up to ask her if she was okay after her accident (*id.* at 38). She also testified that the person working at the valet stand "did come out and said, 'I saw the accident'" (*id.*). Plaintiff testified that she did not get the information of any witnesses to the accident including the person working at the valet stand (*id.*). She also testified that she did not report the accident to anyone inside the building (*id.*). Plaintiff testified that her husband did not witness the accident (*id.* at 40). When asked if she could identify the cause of her accident, plaintiff testified that "It was that I stepped up on a curb that I thought was level and it was not" (*id.* at 41).

*Deposition of Drew Arnold*

Drew Arnold appeared for a deposition on behalf of the defendants. Arnold testified that he is employed by Jeffrey Management Corp., which is the managing agent for a real estate entity called The Feil Organization (Arnold Dep. [NYSCEF Doc. No. 32] at 10). Describing the relationship between those two entities, Arnold testified that "The Feil Organization is the owner entity for the various properties that I manage and Jeffrey Management Corp. is the managing agent" (*id.* at 11). At the time of the deposition Arnold had been employed at Jeffrey Management Corp. as a property manager for 15 years (*id.*). Arnold testified that 2001 Marcus Avenue is a property that he managed (*id.* at 12). As property manager Arnold testified that his responsibilities included "tenant relations, overseeing the day-to-day operations at the various properties, managing construction, et cetera" (*id.*).

Arnold testified that when he began managing that property 15 years before the time of the deposition there was not a valet booth in the parking lot (*id.* at 15). Arnold testified that there was a "discussion" to put valet parking in at 2001 Marcus Avenue "quite a long time ago" (*id.* at 16-17). He testified that the property owners hired contractors to construct the valet parking booth at 2001 Marcus Avenue (*id.* at 17). Arnold testified that he was involved in the day-to-day operations during the construction but there was an "on-site property superintendent, who was physically present during the work every day" (*id.* at 18).

Arnold testified that he has previously appeared on behalf of 2001 Marcus Avenue at depositions but to his recollection, none had involved the valet parking island (*id.* at 18-19). Arnold testified that the property owners hired Rosenbaum Design Group as the architect on the valet parking booth installation project (*id.* at 22). He testified that Rosenbaum drafted plans for the valet parking booth and that Arnold reviewed them (*id.*). He testified that the plans included a

ramp built into the island (*id.*). Arnold testified that since the valet parking island was built "approximately, 10 years ago" from the date of the deposition, there had been no modifications made to the island (*id.* at 23). Arnold testified that the Town of North Hempstead conducted inspections during the construction process (*id.* at 25).

Arnold testified that the valet island complied with the Americans with Disabilities Act requirements (*id.* at 27). He testified that "Rosenbaum had to make sure it did, in order to get a building permit for it" because "the Town [of North Hempstead] wouldn't approve it without all the proper ADA requirements. The ramp, et cetera, are all part of that" (*id.*). Arnold confirmed there is a concrete curb "around the entire island" (*id.* at 28). He testified that the curb of the island was painted yellow (*id.* at 33).

Arnold testified that he learned about plaintiff's accident at 2001 Marcus Avenue when his office received a Letter of Representation (*id.* at 45). He testified that his office kept an incident folder on Ms. Mueller's accident (*id.* at 46). He testified that he did not see any accident reports within her file (*id.*). Arnold testified that "other than having the property super check the condition of the island itself, there was no other investigation to be conducted" in relation to plaintiff's accident (*id.* at 49). Arnold testified that the property superintendent performed the inspection and reported to Arnold that "there were no defects of any kind or any changes or anything to the island. Everything was as it always has been" (*id.* at 50). Arnold testified that between the date of the accident and the date of his deposition, no further construction work had been done on the valet island (*id.* at 55). Arnold testified that he had never received a complaint regarding the valet parking island before (*id.* at 58).

Arnold was asked if he would consider the area of the valet island where the "curb is higher than the ramp on the right side" a dangerous condition. Arnold testified, "I wouldn't

consider it a dangerous condition. It was designed by the architect, it was approved by the Town, it's painted in hazard yellow for people to see it. So it's what the Town wanted installed there and what the architect designed, so no, I would not consider it a dangerous condition" (*id.* at 59). Arnold testified that he did not know the exact dimensions of the curb but "It's a standard sidewalk type curb, nothing special about it" (*id.* at 61). He testified that to his knowledge, Jeffrey Management Corp. has never received a violation from the Town of North Hempstead in relation to the valet island (*id.* at 63).

## SUMMARY JUDGMENT STANDARD

"[T]he proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Ostrov v Rozbruch*, 91 AD3d 147, 152 [1st Dept 2012]). "Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). Once a movant has met this burden, "the burden shifts to the opposing party to submit proof in admissible form sufficient to create a question of fact requiring a trial" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). Finally, evidence must be "construed in the light most favorable to the one moved against" (*Kershaw*, 114 AD3d at 82). Therefore, if there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

[* 5]

## DISCUSSION

In their motion, defendants argue that plaintiff has not raised any specific violations of a building code, applicable regulation, or statute and even so, she cannot demonstrate that the valet parking area violates any code, regulation, or statute (Memo of Law [NYSCEF Doc. No. 37] at 4-5). Plaintiff does not oppose that no violations of codes or statutes are alleged (*see* Opposition [NYSCEF Doc. No. 46] at 13). As such, this Court need only address plaintiff's arguments regarding defendants' liability under theories of common law negligence.

"In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom (*Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 825 [2016] [internal quotation marks and citation omitted]). It is a building owner's "normal duty to maintain the premises in a safe manner" (*Marcinak v Technical Mech. Servs., Inc.*, 17 AD3d 140, 140 [1st Dept 2005]).

Defendants argue that they should be awarded summary judgment because the condition of the curb is not actionable given it is open and obvious and not inherently dangerous. Defendants contend "there is no dispute that the concrete pad and subject curb, sidewalk and/or ramp were maintained in good condition and repair, and it was also painted bright yellow to alert pedestrians" (Memo of Law at 11). In opposition, plaintiff argues that the condition of the curb was inherently dangerous because "One approaching the valet island . . . using their senses would believe and anticipate that the area behind the curb would be flat" (Opp. at 5). Defendants have met their burden of showing that the condition was not inherently dangerous and did not create an optical confusion. Plaintiff testified that there were no broken or cracked areas of the curb where she fell (Plaintiff's Dep. at 29). She further testified that the perimeter of the curb

where she stepped up was painted bright yellow (*id.*). Contrary to her allegation in her Bill of Particulars that there was inadequate lighting, plaintiff testified that on the date of her accident it was a "beautiful spring day" and her accident occurred in the middle of the afternoon (*id.* at 21-22). In support of their argument that the condition of the valet parking stand was not dangerous or defective and was safe for its intended use, defendants through an affidavit of Drew Arnold provide copies of the design plans for the valet stand, the permit application to the Town of North Hempstead, the building permit for the valet stand as depicted in the plans, and certificates that the valet stand passed inspection by the Town of North Hempstead (*see* Aff. of Drew Arnold [NYSCEF Doc. No. 35] Ex. 2-7). Further, Arnold testified that there had been no prior accidents or complaints regarding the condition of the valet stand (Arnold Dep. at 58).

Moreover, defendants provide an expert affidavit of a Certified and Registered Architect Thomas R. Turkel, A.I.A., who inspected and measured the subject valet island and reviewed related documents (*see* Turkel Aff. [NYSCEF Doc. No. 36]). Turkel concluded that "In my professional opinion, to a reasonable degree of architectural certainty, the subject concrete pad, curb and ramp were and are safe for their intended use, and comply with the applicable codes under which they were built, in accordance with the Town-approved building plans, and final approval of the built facility" (*id.* at 9). In addition to the fact that the Town of North Hempstead concluded that the finished valet island "substantially conforms to the approved plans on file in this office and to the requirements of the Zoning Ordinance and the Building Code of the Town of North Hempstead," Turkel also concluded that the subject ramp and curb were designed and built in accordance with ANSI A117.1-2009 "Accessible and Usable Buildings and Facilities" (*id.* at 7).

Turkel affirmed that Section 406.6 provides that "Curb ramps and the flared sides of curb ramps shall be located so they do not project into vehicular traffic lanes, parking spaces, or parking access aisles" (*id.* at 8). Based on his inspection and photographs taken of the location Turkel concluded that the locations of the ramp and the subject east curb were in compliance with this requirement. Turkel also found that the curb and ramp comply with Sections 406.8 (Obstructions) and 406.9 (Handrails) (*id.*).

Turkel stated that the curb immediately to the right of the ramp was necessary to ensure wheelchairs do not fall into traffic and to ensure vehicles did not drive up the ramp and onto the island, and because of this dual functionality, a side flare was not necessary to replace the curb on the east side of the ramp (*id.* at 5). Turkel concluded from his inspection and subject photographs that from the angle which plaintiff approached the island, it is clear that the edge of the curb is painted with bright yellow paint that "contrasted with both the asphalt-paved marked walkway and the elevated concrete pad" (*id.* at 9). He concluded that "the yellow warning paint was a clear visual cue to alert Ms. Mueller to be attentive to the conditions near the painted region; in this instance, the elevation change at the curb as she approached and traversed it" (*id.*). Indeed, photographs taken from the angle at which plaintiff testified she approached the island show the perimeter of the curb is painted with bright yellow paint and the downward slope of the unpainted ramp is also visible over the other side of the painted curb (*see id.* at Appx. B-8)

The evidence provided by defendants is sufficient to establish *prima facie* that the curb and valet stand were not inherently dangerous or defective, were open and obvious and did not create an optical confusion and conformed with subject code requirements and statutes (*see Kovel v Glenwood Mgt. Corp.*, 200 AD3d 460, 461 [1st Dept 2021]; *Abraido v 2001 Marcus*

*Ave., LLC*, 126 AD3d 571, 571-572 [1st Dept 2015]; *Kamps v New York City Tr. Auth.*, 89 AD3d 421, 421-422 [1st Dept 2011]).

In opposition, plaintiff failed to raise a triable issue of fact. Plaintiff argues that the report of her expert, John J. Natoli, P.E., which concludes that the ramp condition was inherently dangerous, creates an issue of fact (Opp. at 5). In his expert report, Natoli concludes that the ramp was improperly designed and should have had flares on both sides of the ramp pursuant to the U.S. Access Board Guide to the ADA Accessibility Standard (Natoli Aff. [NYSCEF Doc. No. 47] at ¶ 11). This Access Board Guide is the only source relied on by Natoli to support the argument that the ramp was defectively designed. As pointed out by defendants, this guide is a recommendation rather than a regulation or specific standard (*see Kovel*, 200 AD3d at 461 ["Plaintiff's expert noted that the City of New York Department of Parks recommends that tree guards be 18 inches in height. This recommendation does not qualify as an accepted industry wide standard"]; *Chester v Museum of Modern Art*, 180 AD3d 562, 562 [1st Dept 2020] ["The affidavit of [plaintiff's] expert referred to general standards concerning design of steps and the utility of handrails. Since the expert's opinion was not supported by reference to 'specific, applicable safety standards or practices,' it was insufficient to defeat the motion"] [internal citations omitted]). Natoli does not provide any information to refute Turkel's conclusion that the ramp and curb are compliant with relevant ANSI regulations and the code of the Town of North Hempstead.

As to the theory that the condition was inherently dangerous in that it created an optical confusion, photographs attached by plaintiff as exhibits to her opposition refute the expert's statement that the ramp "could not be seen by pedestrian[s] approaching from a perpendicular direction" (Natoli Aff. at ¶ 8). As discussed, the photographs not only show the curb's painted

yellow border which suggests caution should be taken, but the downward slope of the ramp can be seen in the pictures taken from the direction that plaintiff approached the valet stand. The dip in the concrete to create the ramp is seen in contrast to the yellow curb and the asphalt. Moreover, the yellow lines on the asphalt that prevent cars from parking next to the island create a pathway for pedestrians to approach the island parallel to the ramp. Plaintiff cannot raise a triable issue of fact when the photographs attached as Exhibit B to her opposition refute the contention that the condition was inherently dangerous (*see Martin v City of N.Y.*, 82 AD3d 653, 654 [1st Dept 2011] ["Although plaintiff alleged that a curb on the property caused her fall and that the curb posed an optical confusion, the photographic evidence is not sufficient to defeat the motions"]; *Hall v New Way Remodeling, Inc.*, 168 AD3d 620, 620 [1st Dept 2019] ["In opposition, plaintiff failed to raise an issue of fact. The opinion of plaintiff's expert was speculative, and posited a theory of 'optical confusion' that was contradicted by the expert's own photographs showing that the door saddle was a different color from the surrounding floor"]; *Denstman v Manhattan Eye, Ear & Throat Hosp.*, 200 AD3d 409, 409 [1st Dept 2021]).

Finally, Natoli's statements that the change in elevation between the curb and the ramp is inherently dangerous because "One approaching the curb expects to step up with their leading foot onto a flat area" and that the yellow paint does not sufficiently suggest to pedestrians that caution should be taken are speculative and do not alone defeat the evidence submitted by defendants that the condition was not dangerous and in compliance with subject code requirements (Natoli Aff. at ¶ 9, 12; *see, e.g., Hall*, 168 AD3d at 620; *Denstman*, 200 AD3d at 409). As such, defendants' motion must be granted.

[* 10]

As this Court holds that defendants are not liable for plaintiff's accident, this Court need not address the arguments about ownership on the part of The Feil Organization advanced in the parties' papers.

## CONCLUSION

Accordingly, it is

ORDERED that defendants' motion for summary judgment is granted. The clerk shall enter judgment accordingly.

| 1/16/2025 | | | | |
|---|---|---|---|---|
| DATE | | | SHLOMO S. HAGLER, J.S.C. | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |